# United States District Court

**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| GRAVEL RATING SYSTEMS LLC, | § § § § | |
| *Plaintiff,* | § | Civil Action No. 4:21-CV-149-ALM |
| v. | § § | |
| COSTCO WHOLESALE CORP., | § § | |
| *Defendant.* | § § § | |

| | | |
|---|---|---|
| GRAVEL RATING SYSTEMS LLC, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | Civil Action No. 4:21-CV-150-ALM |
| LOWE'S HOME CENTERS, LLC, | § § | |
| *Defendant.* | § § § | |

| | | |
|---|---|---|
| GRAVEL RATING SYSTEMS LLC, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | Civil Action No. 4:21-CV-151-ALM |
| TARGET CORP., | § § | |
| *Defendant.* | § § § | |

| | | |
|---|---|---|
| GRAVEL RATING SYSTEMS LLC, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | Civil Action No. 4:21-CV-152-ALM |
| T-MOBILE USA, INC. and T-MOBILE US, INC., | § § § | |
| *Defendant.* | § § § | |

| | | |
|---|---|---|
| GRAVEL RATING SYSTEMS LLC, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 4:21-CV-258-ALM |
| | § | |
| KOHL'S INC., | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

| | | |
|---|---|---|
| GRAVEL RATING SYSTEMS LLC, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 4:21-CV-328-ALM |
| | § | |
| DISH WIRELESS, L.L.C. D/B/A BOOST MOBILE, | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

| | | |
|---|---|---|
| GRAVEL RATING SYSTEMS LLC, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 4:21-CV-356-ALM |
| | § | |
| UNDER ARMOUR, INC., | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

## **CLAIM CONSTRUCTION MEMORANDUM AND ORDER**

Before the Court are Plaintiff Gravel Rating Systems LLC's ("Plaintiff" or "Gravel") Opening Claim Construction Brief (Dkt. #28); Defendant Costco Wholesale LLC's ("Costco"), Defendant  Lowe's Home Centers, LLC's ("Lowe's"), Defendant Target Corp.'s ("Target"), Defendant T-Mobile USA, Inc. and T-Mobile US, Inc.'s ("T-Mobile"), Defendant Kohl's Inc.'s ("Kohl's"), Defendant Dish Wireless, L.L.C. d/b/a Boost Mobile's ("DISH"), and Defendant Under Armour, Inc's ("Under Armour") (collectively "Defendants") Responsive Claim

Construction Brief (Dkt. #33); and Plaintiff's Reply Claim Construction Brief (Dkt. #34).[1] Also before the Court is the parties' February 14, 2022 Joint Claim Construction Chart (Dkt. #35). The Court held a claim construction hearing on March 18, 2022, to determine the proper construction of the disputed claim terms in U.S. Pat. No. 7,590,636 ("the '636 Patent"). Shortly before the start of the March 18, 2022 hearing, the Court provided the parties with preliminary constructions with the aim of focusing the parties' arguments and facilitating discussion.

The Court issues this Claim Construction Memorandum Opinion and Order and hereby incorporates-by-reference the claim construction hearing and transcript as well as the demonstrative slides presented by the parties during the hearing. For the following reasons, the Court provides the constructions set forth below.

## I.      BACKGROUND

The '636 Patent, titled "Knowledge Filter," issued on September 15, 2009, and was filed on February 6, 2006. The '636 Patent generally relates to "a system and apparatus for allowing groups of individuals connected to a computer network such as the Internet to collaboratively build a self-organizing knowledge base that uses ratings and commentary provided by a plurality of users to rank, sort and deliver the information from the knowledge base which best matches each individual user's personal criteria for value in information." '636 Patent at 1:15–22. The Abstract of the '636 Patent states:

> A method and system for sharing knowledge is disclosed. The method and system comprises receiving information input into a database and organizing items of information in the database. The method and system further includes collecting ratings and comments associated with each item of information and allowing users to access and sort items of information according to selected rating criteria in order to find the most reliable and/or valuable information

---

[1] Citations to the parties' filings are to the filing's number in the docket (Dkt. #) and pin cites are to the page numbers assigned through ECF in *Gravel Rating Systems LLC, v. Costco Wholesale Corp.*, Civil Action No. 4:21-CV-149-ALM (E.D. Tex.).

from the database. In a second aspect, the present invention including an interface for providing information concerning a subject is disclosed. The interface comprises a first area that shows the subject and contributor name; and a second area that shows the content of the information item. The interface includes a third area that shows rating related to the subject; and a fourth area that allows users to submit ratings for the information item. Accordingly, a knowledge sharing system and interface are provided which allows every member of a knowledge sharing group to benefit from aggregate knowledge, experience and opinions of other members of the group. The system and method allows individual members to easily locate the information from a collectively generated knowledge base that is most consistent with that individual's personal measures of value in the information.

Claim 1 of the '636 Patent is an illustrative claim and recites the following elements (disputed terms in italics):

> 1. A computer-implemented method, comprising:
>
> a computer system *storing items of information* in a database, wherein the items are received from a first set of two or more of a plurality of remote computer systems coupled to the computer system via a computer network;
>
> the computer system receiving, via the computer network, *submissions* regarding two or more particular ones of *the stored items of information*, wherein each submission is received from a corresponding one of a second set of two or more of the plurality of remote computer systems, wherein each of said *submissions* includes a rating and/or a comment regarding a corresponding one of *the stored items* that has been transmitted to the corresponding remote computer system via the computer network by the computer system;
>
> the computer system storing the received *submissions* in the database;
>
> the computer system receiving a request from a given one of the plurality of remote computer systems to *view a listing of the stored items of information according to an ordering consistent with a selected criterion that pertains to the stored submissions*; and
>
> responsive to the request, the computer system providing a first set of data to the given remote computer system, wherein the first set of data is usable on the given remote computer system to display said listing of *the stored items* according to said ordering.

## II.     LEGAL PRINCIPLES

### A.  Claim Construction

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). To determine the meaning of the claims, courts start by considering the intrinsic evidence. *Id.* at 1313; *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004); *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp., Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). The intrinsic evidence includes the claims themselves, the specification, and the prosecution history. *Phillips*, 415 F.3d at 1314; *C.R. Bard, Inc.*, 388 F.3d at 861. The general rule—subject to certain specific exceptions discussed *infra*—is that each claim term is construed according to its ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the patent. *Phillips*, 415 F.3d at 1312–13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003); *Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336, 1347 (Fed. Cir. 2014) (quotation marks omitted) ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time.") *cert. granted, judgment vacated,* 135 S. Ct. 1846 (2015).

"The claim construction inquiry . . . begins and ends in all cases with the actual words of the claim." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998). "[I]n all aspects of claim construction, 'the name of the game is the claim.'" *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1298 (Fed. Cir. 2014) (quoting *In re Hiniker Co.*, 150 F.3d 1362, 1369 (Fed. Cir. 1998)) *overruled on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015). First, a term's context in the asserted claim can be instructive. *Phillips*, 415 F.3d at 1314. Other asserted or unasserted claims can also aid in determining the claim's meaning, because

claim terms are typically used consistently throughout the patent. *Id.* Differences among the claim terms can also assist in understanding a term's meaning. *Id*. For example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation. *Id*. at 1314–15.

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id*. (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id*. (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). This is true because a patentee may define his own terms, give a claim term a different meaning than the term would otherwise possess, or disclaim or disavow the claim scope. *Phillips*, 415 F.3d at 1316. In these situations, the inventor's lexicography governs. *Id*.

The specification may also resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex, Inc.*, 299 F.3d at 1325. But, "'[a]lthough the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims.'" *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)); *see also Phillips*, 415 F.3d at 1323. "[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims

absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004).

The prosecution history is another tool to supply the proper context for claim construction because, like the specification, the prosecution history provides evidence of how the U.S. Patent and Trademark Office ("PTO") and the inventor understood the patent. *Phillips*, 415 F.3d at 1317. However, "because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.* at 1318; *see also Athletic Alts., Inc. v. Prince Mfg.*, 73 F.3d 1573, 1580 (Fed. Cir. 1996) (ambiguous prosecution history may be "unhelpful as an interpretive resource").

Although extrinsic evidence can also be useful, it is "'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc.*, 388 F.3d at 862). Technical dictionaries and treatises may help a court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but technical dictionaries and treatises may provide definitions that are too broad or may not be indicative of how the term is used in the patent. *Id.* at 1318. Similarly, expert testimony may aid a court in understanding the underlying technology and determining the particular meaning of a term in the pertinent field, but an expert's conclusory, unsupported assertions as to a term's definition are not helpful to a court. *Id*. Extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id*. The Supreme Court has explained the role of extrinsic evidence in claim construction:

> In some cases, however, the district court will need to look beyond the patent's intrinsic evidence and to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period. *See, e.g., Seymour v. Osborne*, 11 Wall. 516, 546 (1871)

(a patent may be "so interspersed with technical terms and terms of art that the testimony of scientific witnesses is indispensable to a correct understanding of its meaning"). In cases where those subsidiary facts are in dispute, courts will need to make subsidiary factual findings about that extrinsic evidence. These are the "evidentiary underpinnings" of claim construction that we discussed in *Markman*, and this subsidiary factfinding must be reviewed for clear error on appeal.

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 331–32 (2015).

## B.      Departing from the Ordinary Meaning of a Claim Term

There are "only two exceptions to [the] general rule" that claim terms are construed according to their plain and ordinary meaning: "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of the claim term either in the specification or during prosecution."[2] *Golden Bridge Tech., Inc. v. Apple Inc.*, 758 F.3d 1362, 1365 (Fed. Cir. 2014) (quoting *Thorner v. Sony Comput. Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012)); *see also GE Lighting Sols., LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed. Cir. 2014) ("[T]he specification and prosecution history only compel departure from the plain meaning in two instances: lexicography and disavowal."). The standards for finding lexicography or disavowal are "exacting." *GE Lighting Sols.*, 750 F.3d at 1309.

To act as his own lexicographer, the patentee must "clearly set forth a definition of the disputed claim term," and "clearly express an intent to define the term." *Id.* (quoting *Thorner*, 669 F.3d at 1365); *see also Renishaw*, 158 F.3d at 1249. The patentee's lexicography must appear "with reasonable clarity, deliberateness, and precision." *Renishaw*, 158 F.3d at 1249.

To disavow or disclaim the full scope of a claim term, the patentee's statements in the specification or prosecution history must amount to a "clear and unmistakable" surrender. *Cordis*

---

[2] Some cases have characterized other principles of claim construction as "exceptions" to the general rule, such as the statutory requirement that a means-plus-function term is construed to cover the corresponding structure disclosed in the specification. *See, e.g., CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1367 (Fed. Cir. 2002).

*Corp. v. Bos. Sci. Corp.*, 561 F.3d 1319, 1329 (Fed. Cir. 2009); *see also Thorner*, 669 F.3d at 1366 ("The patentee may demonstrate intent to deviate from the ordinary and accustomed meaning of a claim term by including in the specification expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope."). "Where an applicant's statements are amenable to multiple reasonable interpretations, they cannot be deemed clear and unmistakable." *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1326 (Fed. Cir. 2013).

## C.      Definiteness Under 35 U.S.C. § 112, ¶ 2 (pre-AIA) / § 112(b) (AIA)

Patent claims must particularly point out and distinctly claim the subject matter regarded as the invention. 35 U.S.C. § 112, ¶ 2. A claim, when viewed in light of the intrinsic evidence, must "inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014). If it does not, the claim fails § 112, ¶ 2 and is therefore invalid as indefinite. *Id.* at 901. Whether a claim is indefinite is determined from the perspective of one of ordinary skill in the art as of the time the application for the patent was filed. *Id.* at 911. As it is a challenge to the validity of a patent, the failure of any claim in suit to comply with § 112 must be shown by clear and convincing evidence. *BASF Corp. v. Johnson Matthey Inc.,* 875 F.3d 1360, 1365 (Fed. Cir. 2017). "[I]ndefiniteness is a question of law and in effect part of claim construction." *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 517 (Fed. Cir. 2012).

When a term of degree is used in a claim, "the court must determine whether the patent provides some standard for measuring that degree." *Biosig Instruments, Inc. v. Nautilus, Inc.*, 783 F.3d 1374, 1378 (Fed. Cir. 2015) (quotation marks omitted). Likewise, when a subjective term is used in a claim, "a court must determine whether the patent's specification supplies some standard for measuring the scope of the [term]." *Ernie Ball, Inc. v. Earvana, LLC*, 502 F. App'x 971, 980

(Fed. Cir. 2013) (citations omitted). The standard "must provide objective boundaries for those of skill in the art." *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014).

### III.    LEVEL OF ORDINARY SKILL IN THE ART FOR THE ASSERTED USWS PATENTS

It is well established that patents are interpreted from the perspective of one of ordinary skill in the art. *See Phillips*, 415 F.3d at 1313 ("[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application."). The Federal Circuit has advised that the "[f]actors that may be considered in determining the level of skill in the art include: (1) the educational level of the inventors; (2) the type of problems encountered in the art; (3) prior art solutions to those problems; (4) the rapidity with which innovations are made; (5) sophistication of the technology; and (6) education level of active workers in the field." *Env'tl Designs, Ltd. v. Union Oil Co. of California*, 713 F.2d 693, 696 (Fed. Cir. 1983). "These factors are not exhaustive but are merely a guide to determining the level of ordinary skill in the art." *Daiichi Sankyo Co. Ltd. v. Apotex, Inc.*, 501 F.3d 1254, 1256 (Fed. Cir. 2007).

Plaintiff contends that a person of ordinary skill in the art was a person with (i) a B.S. in computer science or a closely related field, with two or more years of experience in computer programming, or (ii) an M.S. in computer science. Plaintiff further argues that additional education or experience could also serve as a substitute for these qualities. Defendants' definition of a person of ordinary skill in the art does not appear to be before the Court for the purposes of claim construction.

Having considered Plaintiff's proposal, and the factors that may be considered in determining the level of skill in the art, the Court finds that a person of ordinary skill in the art would have had at least (i) a B.S. in computer science or a closely related field, with two or more

years of experience in computer programming, or (ii) an M.S. in computer science.  A person of ordinary skill in the art could substitute experience for these education requirements.

## I.     THE PARTIES' STIPULATED TERMS

The parties were not able to agree to the construction of any terms. Dkt. #35 at 3. Defendants further stated in their Responsive Claim Construction Brief that they "no longer seek constructions of the following terms initially identified in the P.R. 4-2 disclosures served by the above-captioned defendants and the defendants in *Gravel Rating Systems LLC v. McAfee, LLC*, 4:21-CV-00259 (E.D. Tex.) and *Gravel Rating Systems LLC v. Broadcom Inc.*, Civil Action No. 4:21-CV-329 (E.D. Tex.): 'wherein each of said submissions includes a rating and/or a comment' (claim 1); 'extensible hierarchy of information categories' / 'extensible hierarchy' (claims 4, 5); and 'one rating' / 'rating' (claims 8, 9)." Dkt. #33 at 6 n.1.

## II.    CONSTRUCTION OF DISPUTED TERMS IN THE ASSERTED USWS PATENTS

The parties' dispute the meaning and scope of five terms or phrases in the '636 Patent.

### A.  "consistent with"

| Disputed Term | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| "view a listing of the stored items of information according to an ordering consistent with a selected criterion that pertains to the stored submissions" | Definite; and No construction necessary. | Indefinite. |

### 1.  Analysis

The phrase "view a listing of the stored items of information according to an ordering consistent with a selected criterion that pertains to the stored submissions" appears in Claim 1 of

the '636 Patent. The parties dispute whether the term "consistent with" in this  phrase is indefinite.[3]

Defendants argue that the intrinsic record provides no guidance on what is "consistent with" a criterion. Defendants contend that the specification only describes sorting items of information "by," "based on," or "in accordance with" the criterion. Dkt. #33 at 10 (citing '636 Patent at 12:1–23 (date of submission); 11:12–27 (date of contribution)). According to Defendants, the specification does not disclose whether the items discussed are sorted in chronological order, reverse chronological order, a non-chronological order, in a certain time range, etc. Defendants further argue that the specification does not explain whether ordering items by multiple criteria could nevertheless be considered to be "consistent with a selected criterion." Defendants contend that nothing in the specification provides guidance as to when an ordering would not be "consistent with" the selected criterion.

The Court finds that the disputed phrase is not indefinite. A person of ordinary skill in the art reading this term in the context of Claim 1, the specification, and the prosecution history would understand the scope of the invention with reasonable certainty. For example, the specification provides the following description regarding response to selection, viewing, and filtering activities of a user as illustrated in Figure 11:

7. Use of the KnowledgeFilter System

FIG. 11 is an activity diagram illustrating knowledge output of the KnowledgeFilter software in response to selection, viewing, and filtering activities of a user. The user enters the system by retrieving the Web page corresponding to the Uniform Resource Locator (URL) of the knowledge base 1102. This results in the display 1104 of the Knowledge Navigation Console 302 with a Category Index View contained in the contents area 306. The user can select a Category 1106, which initiates the View Category command. The

---

[3] The parties' arguments for this disputed term can be found in Plaintiff's Opening Claim Construction Brief (Dkt. #28 at 20-22); Defendants' Responsive Claim Construction Brief (Dkt. #33 at 10-11); and Plaintiff's Reply Claim Construction Brief (Dkt. #34 at 5-8).

system displays a list of items in the selected category 1108 sorted by a default sorting criterion, such as date of submission as implemented in this embodiment of the invention. *The user can now take one of four actions*.

1) The user may select an item 1110 for immediate viewing 1112 in display format 302.

2) *The user may select from a set of standard sorting options 506 in response to which the system displays the items in the requested sorted order 1116.*

3) *The user may select a quick sort 1118, which sorts the items based on a default criterion (such as by date of submission) in response to which the system displays the items in the requested sorted order 1116.*

4) *The user may select a custom sort 1120.* The system responds by presenting 1122 a selection interface 512, through which the user select personal preferences indicating the importance of each rating criterion, assign relative weights to various rating criteria, and submit 724 a custom sorting query*, in response to which the system calculates 726 a sort order based on a weighted average of the users inputs, and displays the items in the requested sorted order 716, causing the most useful content to rise to the top of the list.* After any of the sorting options 2)-4) described above, the user can select an item 1110 for immediate viewing 1112 in display format 302.



FIG.11

'636 Patent at 12:1–35 (emphasis added), Figure 11. As described above, the system receives a request and provides a listing of the stored information according to the user's selected criterion.

Figure 5 provides another example and is described in the specification as follows:

> FIG. 5 is an illustration of the Index Window user interface of one embodiment of the invention, showing detailed features of the knowledge output of the system in response to a user query. *An index page 502 showing standard and custom sorting options for lists of contributions to the knowledge base, is displayed in response to a user query.* In the case of the embodiment of the invention in this description, the lists shown are recipes. The display is comprised of:

1) an area 504 in which *a user can make sorting selections*, including sort selections from a standard list 506; a quick sort button 508 which *presents items sorted in accordance with a default* such as by date of contribution of items; and *a custom sort button 510 which brings up an auxilliary display* 512 in which the user can make detailed selections rating the importance of sort criteria;

2) *an area 514 where the sorted items are displayed* in tabular form;

3) an area 516 in which search links are located, which when clicked bring up a context-sensitive search interface 702 shown in FIG. 7, in which the user can enter search terms in the input window 704.



FIG.5

*Id.* at 11:12–33 (emphasis added), Figure 5. As stated and illustrated in the description above, the

system receives a request and provides a listing of the stored information according to the user's selected criterion. Indeed, the Summary of the Invention section states that "[t]he method and system further includes collecting ratings and comments associated with each item of information and *allowing users to access and sort items of information according to selected rating criteria* in order to find the most reliable and/or valuable information from the database." *Id.* at 3:47–52 (emphasis added). Accordingly, a person of ordinary skill in the art reading this term in the context of the intrinsic evidence would understand the scope of the invention with reasonable certainty.

Defendants argue that the "specification fails to inform what qualifies as an ordering 'consistent with' a selected criterion," because it does not use the term "consistent with," but instead uses the term "presents items sorted in accordance with," as in Figure 5. The Court notes that definiteness does not require that the exact language in the claims appear in the specification. All that is required is that the claim, interpreted in light of the specification and the prosecution history, "inform[s] those skilled in the art about the scope of the invention with reasonable certainty." *See Nautilus, Inc. v. Biosig Instruments, Inc.,* 572 U.S. 898, 910 (2014).

Defendants also argue that the specification does not disclose whether the items discussed are sorted in chronological order, reverse chronological order, a non-chronological order, in a certain time range, etc. Contrary to Defendants' argument, there is no requirement under definiteness law for the patent to spell out every possible ordering of items that would be consistent with a selected criterion, such as the chronological, non-chronological, time ranges, and/or or reverse chronological orderings, as argued by Defendants. All that is claimed is ordering consistent with a selected criterion.

During the claim construction hearing, Defendants argued that the specification states "[t]he system and method allows individual members to easily locate the information from a

collectively generated knowledge base that is most consistent with *that individual's personal measures of value in the information*." '636 Patent at Abstract (emphasis added). According to Defendants, the claims are drafted "removing the subjective factor" of the "individual's personal measure of value," but retaining the "subjective test" of "consistent with." The Court disagrees. Defendants' argument attempts to improperly read language into the claim to support their indefinite argument.

As Defendants concede, the alleged "subjective test" (*i.e.*, "individual's personal measure of value") is not included in the actual claim language. Moreover, for the reasons discussed above, a person of ordinary skill in the art reading this term in the context of Claim 1, the specification, and the prosecution history would understand the scope of the invention with reasonable certainty. Accordingly, the Court finds that Defendants failed to show by clear and convincing evidence that the term "consistent with" is indefinite.

### 2. Court's Construction

The Court finds that the phrase **"view a listing of the stored items of information according to an ordering consistent with a selected criterion that pertains to the stored submissions"** is not indefinite, and is given its **plain and ordinary meaning**.

### B. "stored items of information" and "submissions"

| Disputed Term | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| "stored items of information" | No construction necessary. | "information other than a submitted rating or comment" |
| "submissions" | No construction necessary. | "information other than stored items of information" |

### 1. Analysis

The term "stored items of information" and "submission" appear in Claim 1 of the '636 Patent. The parties dispute whether and how the recited "stored items of information" must be

distinct from the recited "submissions," as Defendants contend.[4]

The method of Claim 1 of the '636 Patent requires a computer system configured to store "items of information in a database." The method further requires the computer system to be configured to receive "submissions regarding two or more particular ones of the stored items of information." Claim 1 explicitly recites that the submissions "include[] a rating and/or comment regarding a corresponding one of the stored items." In other words, the submission is a rating and/or comment on the item of information stored in the database. Claim 1 then recites that the computer system is further configured to subsequently "view a listing of the stored items of information according to an ordering consistent with a selected criterion that pertains to the stored submissions." Defendants argue that the language of Claim 1 requires the recited "stored items of information" be distinct from the recited "submissions."

The specification indicates that the term "stored items of information" is very broad. For example, the specification states that the item may include the following:

> Items are stored in an Item Table 210, and the knowledge base can contain additional item tables 212, etc., which can be added administratively or by a user. An Item record (in the case of the example embodiment of the invention, a recipe), is comprised of values of the following fields with the indicated data types and uses:

---

[4] The parties' arguments for this disputed term can be found in Plaintiff's Opening Claim Construction Brief (Dkt. #28 at 22-26); Defendants' Responsive Claim Construction Brief (Dkt. #33 at 11-16); and Plaintiff's Reply Claim Construction Brief (Dkt. #34 at 9-12).

| | TABLE 3 | |
|---|---|---|
| Field Name | Use | |
| id | unique identifier allocated from kbtable | |
| rPost | main body of the knowledge entry | |
| rEmail | email address of contributor | |
| rLink | link or source address | |
| rGrade | overall grade value | |
| rTaste | criteria 1 value | |
| rTasteCt | criteria 1 count | |
| rHealth | criteria 2 value | |
| rHealthCt | criteria 2 count | |
| rEase | criteria 3 value | |
| rEaseCt | criteria 3 count | |
| rPosCom | positive comments | |
| rPosCt | positive comment count | |
| rNegCom | negative comments | |
| rNegCt | negative comment count | |
| rOthCom | other comments | |
| rCorValue | corroboration value | |
| rName | item name | |
| rDate | date created | |
| rCatid | id of category to which item table is linked | |

'636 Patent at 7:61–8:26. The specification does not place any limits on the "stored items of information," and in fact, indicates that it may include positive and negative comments. Accordingly, Defendants' construction that excludes comments is contradicted by the intrinsic evidence.

Regarding the term "submission," the specification indicates that the method and system "includes collecting ratings and comments associated with each item of information and allowing users to access and sort items of information according to selected rating criteria in order to find the most reliable and/or valuable information from the database." *Id.* at 3:48–52. Figure 8 provides "an illustration of the Comments interface of one embodiment of the invention, through which the user can submit positive, negative, or neutral comments."



FIG.8

*Id.* at Figure 8. As discussed above, Claim 1 explicitly recites that a "submission" must include "a rating and/or a comment regarding a corresponding one of the stored items." The specification also explains that "FIG. 12 is an activity diagram illustrating knowledge input activities of a user, showing rating activities, and submittal of new items, and may be considered a continuation of FIG. 11. It shows rating activities, and submittal of new items…The user can *submit ratings* 1206 of the displayed item by selecting from a range of predetermined values of rating variables 314 through the *rating submission* button in the *rating submission* area 312." *Id.* at 12:36-42.



FIG.12

*Id.* at Figure 12. Thus, the specification indicates that the rating/comment "submissions" from a user may not be completely interchangeable with the recited "stored items of information," which could be things like a new category of recipes. Accordingly, Defendants are correct that the recited "submission" is not as broad as the recited "stored items of information," and must include at least "a rating and/or a comment."

However, as discussed above, this limitation is explicitly recited in Claim 1, and Defendants have not pointed to anything in the intrinsic evidence that sets forth an express definition for either phrase that would differ from its ordinary meaning. Defendants do not argue that the patentee disclaimed any subject matter in prosecution. Instead, Defendants' construction excludes ratings or comments from being part of "stored items of information." This is inconsistent with the intrinsic evidence.

As discussed above the specification indicates that the "stored items of information" may

include comments or be a comment itself. Indeed, the specification indicates that a stored item of information can include a submitted comment from a user that is then rated or commented upon by a user.

FIG. 12 is an activity diagram illustrating knowledge input activities of a user, showing rating activities, and submittal of new items, and may be considered a continuation of FIG. 11. It shows rating activities, and submittal of new items. The user may view the knowledge base output of the system for a particular item 1202 displayed in the Knowledge Navigation Console 302.

*The user can submit ratings 1206 of the displayed item by selecting from a range of predetermined values of rating variables 314 through the rating submission button in the rating submission area 312. The system responds by adding the ratings to the aggregate values for the item and redisplaying the item 1208.* The system constrains the user by tracking and controlling the rating process to prevent the user from submitting multiple ratings of a single information item.

*The system also tracks the aggregate ratings of contributors, allowing content item submissions to be sorted by contributor rating or ranking within the entire system. The user can also communicate with individual contributors by automated communication links. The user can also make comments 1210 by selecting the comment interface 802, and filling in the text area 804, and choosing to tag the comments as positive, negative, or neutral by means of the radio buttons 806. The system responds by adding the comments to the record for the item, recalculates the aggregate ratings, and redisplaying the item with the aggregate ratings, comments 1208, and level of comments support 308.* From the Knowledge Navigation Console 302, with the category list displayed, the user can select 1212 to submit a new category through the Create a New Category interface 902. The system responds by adding the category to the list of categories and displaying the category list with the new category included.

From the Knowledge Navigation Console with the items list for a particular category displayed 502, the user can select to submit a new item through the New Item interface 1002. The system responds by adding the new Item to the knowledge base, and displaying the category with the new Item included. Since the default sort of items is by date of submission, the newly submitted item will appear at the top of the list of items. The new Item can now

> be viewed, and rated by the same or some different user(s), enhancing the value of the knowledge base.

*Id.* at 12:36–13:10. A person of ordinary skill in the art would understand from this disclosure that a stored item of information may be a submitted comment from a user that is then rated or commented upon by a user. Thus, the Court rejects Defendants' construction, because it improperly limits the broad term "a stored item of information."

However, the Court agrees that there must be some distinction between the two terms. Indeed, Plaintiff stated during the claim construction hearing that the "stored items of information" are very different from "submissions." The Court finds that this distinction is captured by requiring the method to be performed in the recited order. The Court is cognizant that "as a general rule [a method] claim is not limited to performance of the steps in the order recited, unless the claim explicitly or implicitly requires a specific order." *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1345 (Fed. Cir. 2008). "However, a claim 'requires an ordering of steps when the claim language, as a matter of logic or grammar, requires that the steps be performed in the order written, or the specification directly or implicitly requires' an order of steps." *Mformation Techs., Inc. v. Research in Motion Ltd.*, 764 F.3d 1392, 1398 (Fed. Cir. 2014) (quoting *TALtech Ltd. v. Esquel Apparel, Inc.*, 279 Fed. Appx. 974, 978 (Fed. Cir. 2008)).

Here, the Court finds that recited order captures the distinction and association between the "stored items of information" and "submissions." Claim 1 recites a "computer-implemented method," which involves storing items of information in a database that are received from "a first set of two or more of a plurality of remote computer systems." Claim 1 then recites that the system receives "submissions regarding two or more particular ones of the stored items of information, wherein each submission is received from a corresponding one of a second set of two or more of the plurality of remote computer systems, wherein each of said submissions includes a rating

and/or a comment regarding a corresponding one of the stored items." Claim 1 further recites that the received submissions are stored in the database. In other words, the received submission must be "a rating and/or a comment" about the previously "stored items of information." A computer system that only stores unassociated "submissions" and "items of information" would not fall within the scope of the claims. Accordingly, as a matter of logic, the steps of Claim 1 must be performed in the order recited. This captures the distinction between "submissions" and "stored items of information," and resolves the parties dispute regarding these terms. Finally, during the claim construction hearing, Plaintiff presented arguments related to the prosecution history. The Court has considered Plaintiff's arguments and finds them  unpersuasive and irrelevant.

### 2.  Court's Construction

For the reasons set forth above, the terms **"stored items of information"** and **"submissions"** are given their **plain and ordinary meaning.** The Court further finds that the steps of Claim 1 must be performed in the recited order.

### C.  "contribution source" and "a given contribution source"

| Disputed Term | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| "contribution source" | Definite; and No construction necessary. | Indefinite. |
| "given contribution source" | Definite; and No construction necessary. | Indefinite. |

### 1.  Analysis

The term "contribution source" appears in Claim 8 of the '636 Patent. The term "a given contribution source" appears in Claim 9 of the '636 Patent.  The parties dispute whether the terms "contribution source" (Claim 8) and "given contribution source" (Claim 9) are indefinite for lacking proper antecedent basis.[5]

---

[5] The parties' arguments for this disputed term can be found in Plaintiff's Opening Claim

As an initial matter, the term "given contribution source" is introduced with the indefinite article "a" in Claim 9, and therefore does not lack antecedent basis. Notwithstanding, the Court finds that the terms are not indefinite. A person of ordinary skill in the art reading Claims 1, 8, and 9, and the relevant portions of the specification and prosecution history, would understand the scope of the invention with reasonable certainty.

The specification states that "[t]he object of the present invention is to design a self-organizing system that is easy to navigate, easy to contribute content and opinions to, and that automatically presents the information that is most meaningful or useful to an individual user to that users attention without discarding the rest of the information in the database." '636 Patent at 3:4–9. To accomplish this objective, the specification discloses a "a knowledge-sharing system which allows every member of a knowledge-sharing group to benefit from the aggregate knowledge, experience and opinions of other members of the group and allows individual members of the group to easily locate the information from the collectively generated knowledge base that is most consistent with that individual's personal measures of value in information." *Id.* at 4:64–5:3. The specification further discloses a comment interface that allows a user to contribute as follows:

> FIG. 8 is an illustration of the Comments interface of one embodiment of the invention, through which the user can submit positive, negative, or neutral comments. The user can enter comments about an item through the Comment interface 802, by writing in area 804. The comments can be tagged as positive or negative or neutral by means of radio buttons 806, and an email address can be added optionally 808 by the user to facilitate response from others.

---

Construction Brief (Dkt. #28 at 29-31); Defendants' Responsive Claim Construction Brief (Dkt. #33 at 16-18); and Plaintiff's Reply Claim Construction Brief (Dkt. #34 at 13-14).



FIG.8

*Id.* at 11:45–52, Figure 8. The specification further states that an "additional feature of the system" includes "[a] system of tracking rating submissions that prevents any one user from voting on a given content submission more than one time." *Id.* at 5:44–50. This is the limitation introduced by Claims 8 and 9, and limits or prevents any one user or "contribution source" from rating a stored items of information more than once.

Moreover, the specification describes "contributors" as users or human beings submitting information items. For example, the specification indicates that "contributors" have names and email addresses, and that users can communicate with the contributors. Specifically, the specification states the following:

> The system also tracks the aggregate ratings of contributors, allowing content item submissions to be sorted by contributor rating or ranking within the entire system. The user can also communicate with individual contributors by automated communication links.



*Id.* at 12:51–55, Figure 2 (partial).

Defendants argue that Claim 1, from which Claims 8 and 9 depend, does not recite the words "contribution" or "source," and therefore lack proper antecedent basis. As discussed above, the term "given contribution source" is introduced with the indefinite article "a," and therefore does not lack antecedent basis. Furthermore, Claim 8 is directed to maintaining "at most one rating per contribution source," and Claim 9 is directed to "controlling said receiving and said storing of the submissions to prevent a given contribution source" from rating a stored items of information more than once. For the reasons discussed above, a person of ordinary skill in the art would understand that the "contribution source" is a "user providing a rating." Thus, the claims are directed to storing only one rating for any contributor or user, and is not directed to a specific contributor. In other words, the claims recite a characteristic of the system, and not an undisclosed or uncertain "contribution source." Accordingly, a person of ordinary skill in the art would understand that the recited " contribution source" is "a user providing a rating."

Plaintiff argues that a person of ordinary skill in the art would understand from the plain language of Claim 1 that the contribution source in Claims 8 and 9 refers to the second set of computer systems in Claim 1, particularly Claim 1's recitation "wherein each submission is

received from a corresponding one of a second set of two or more of the plurality of remote computer systems, wherein each of said submissions includes a rating and/or a comment regarding a corresponding one of the stored items that has been transmitted to the corresponding remote computer system via the computer network by the computer system." According to Plaintiff, the term "contribution source" in Claims 8 and 9 finds antecedent basis in the second set of computer systems, because the second set of computer systems in Claim 1 provides "submissions" that include such ratings and/or comments on the stored items received from the first set of computer systems.

Defendants respond that if the required antecedent basis could be found in the "second set" of remote computer systems, then it also could be found in the "first set" of remote computer systems. According to Defendants, the claim language provides multiple plausible candidates for the antecedent basis for "contribution source" and "given contribution source." The Court disagrees with both parties' arguments, because the term "*a* given contribution source" in Claim 9 does not lack antecedent basis. Moreover, the term "contribution source" does not refer to an undeterminable contributor or user, but instead refers to a characteristic of the system to maintain or store only one rating from *any* contribution source. Accordingly, the Court finds that Defendants failed to show by clear and convincing evidence that the terms "contribution source" and ""a given contribution source" are indefinite.

### 2. Court's Construction

For the reasons set forth above, the Court construes the term **"contribution source"** to mean **"a user providing a rating."** The Court also construes the term **"a given contribution source"** to mean **"a user providing a rating."**

### III.     CONCLUSION

The Court adopts the constructions above for the disputed terms of the Asserted Patents. Furthermore, the Parties should ensure that all testimony that relates to the terms addressed in this Order is constrained by the Court's reasoning. However, in the presence of the jury the Parties should not expressly or implicitly refer to each other's claim construction positions and should not expressly refer to any portion of this Order that is not an actual construction adopted by the Court. The references to the claim construction process should be limited to informing the jury of the constructions adopted by the Court.

**SIGNED this 28th day of April, 2022.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE